UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv-22132-COOKE

SAFARI PROGRAMS, INC., d/b/a
Safari Ltd.,

    Plaintiff,

vs.

QUERCIA, INC., a Florida Corporation,
d/b/a IQON,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION TO QUASH SERVICE OF PROCESS AND DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

    Plaintiff Safari Programs, Inc. ("Plaintiff" or "Safari") brings this case against Defendant, Quercia, Inc. ("Defendant" or "Quercia"), seeking damages and injunctive relief under the Lanham Act, 15 U.S.C. § 1125, and under Florida law arising from Quercia's alleged use of false and misleading advertising. Before me is Quercia's Motion to Quash Service of Process and Dismiss for Insufficient Service of Process ("Motion") (ECF No. 20). I have reviewed the Motion, the record, and the relevant legal authorities. For the reasons below, Quercia's Motion is granted.

#### I. BACKGROUND

    Safari, a toy animal figurine business, dismissed David Quercia in 2011 for poor performance and acts of dishonesty. David Quercia then founded Quercia, a direct competitor of Safari. Later, Rebecca Garcia ("Garcia") and Elizabeth Duverger ("Duverger") resigned as sales employees of Safari to work for Quercia. Safari contends that David Quercia, Garcia, and Duverger breached the confidentiality agreements they had with Safari by transferring proprietary information and trade secrets from Safari's database, using them to gain an unfair advantage for Quercia over Safari. Safari also alleges that Quercia disseminated false and misleading advertisements to the public on its website, and printed materials that have unfairly harmed Safari's business.

The Florida Secretary of State lists Quercia's principal place of business as 3111 North Ocean Drive #806, Hollywood, Florida 33019. But according to Safari, Quercia has vacated that address. It believes that Quercia is concealing its whereabouts from the public, as displayed by the lack of contact information on Quercia's website at the time of filing, as well as Safari's failed attempts to locate an alternative address through a private investigator's skip trace. As such, Safari asserts that substitute service on the Florida Secretary of State is warranted under Florida law. After unsuccessful attempts to serve Quercia, Safari transmitted the Summons and Complaint to the Florida Secretary of State for substitute service under Fla. Stat. § 48.181 on August 4, 2015. *See* ECF No. 17-4 at 4.

## II.   LEGAL STANDARDS

To serve a corporation, a party may "deliver[] a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B), or, relevant here, "follow[] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id.* 4(e)(1).

Section 48.181 of the Florida Statutes permits a party to effectuate substitute service on a corporation through the Florida Secretary of State "in limited circumstances." *Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2009 WL 1220513, at *1 (S.D. Fla. 2009). To perfect substitute service under Fla. Stat. § 48.181, "the plaintiff must allege in the complaint the jurisdictional basis for invoking the statute." *Id*. Florida's substitute service statute may apply to a corporation that "conducts business in Florida and is . . . a resident of Florida concealing [its] whereabouts." *Id.*; *see also* § 41.181. Since "the lack of personal service of process implicates due process concerns, the plaintiff must strictly comply with the statutory requirements." *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-CV-665-T-33EAJ, 2011 WL 3296812, at *4 (M.D. Fla. 2011) (quoting *Smith v. Leaman*, 826 So.2d 1077, 1078 (Fla. 2nd DCA 2002)).

A plaintiff must "show by affidavit or otherwise that sufficient search and inquiry was actually made to ascertain that the defendant was concealing his whereabouts." *Bird v. Int'l Graphics, Inc.,* 362 So.2d 316, 317 (Fla. 3d DCA 1978). In order to justify the use of substituted service, a court does not examine "whether it was in fact possible to effect

personal service in a given case, but whether the [plaintiff] reasonably employed knowledge at [its] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [it] to effect personal service on the defendant." *Grammer v. Grammer*, 80 So. 2d 457, 460 – 61 (Fla. 1955). Thus, "the plaintiff must demonstrate the exercise of due diligence in attempting to locate the defendant." *Wiggam v. Bamford*, 562 So. 2d 389, 391 (Fla. 4th DCA 1990). Notably, "failure to utilize obvious and available leads to locate the defendant is fatal to a finding of due diligence." *Knabb v. Morris*, 492 So.2d 839, 841 (Fla. 5th DCA 1986) (holding due diligence not met because of plaintiff's failure to follow obvious leads, despite plaintiff hiring an investigator who attempted service at three different addresses, checked the telephone directory, the postal service, and several utility companies).

### III. DISCUSSION

Safari contends it served Quercia by means of substitute service under Fla. Stat. § 48.181 because Quercia failed to maintain an office for its registered agent to receive service of process in violation of Florida law. *See* Fla. Stat. § 48.091. Further, Safari alleges it has exercised due diligence in ascertaining Quercia's whereabouts. It outlines the steps it took to locate a viable address for Quercia:

(1) An unsuccessful attempt at service on what the Florida Secretary of State lists as Quercia's principal place of business.

(2) After a private investigator's skip tracing, an unsuccessful attempt at service on an address registered to a personalized Florida license tag, "QUERCIA," registered to Quercia principal David Quercia. The individual who owned and occupied the unit represented there had never been anyone named Quercia residing at the address.

(3) Communications with the attorney who represents Quercia in a related state court matter, inquiring whether he could accept service on Quercia's behalf. The attorney represented he could not accept service.

These efforts, however, do not reach the level of due diligence required before substitute service is supported under Florida law. At bottom, Plaintiff did not follow the obvious and available leads of inquiring with Defendant's attorneys about their client's possible location. Similarly, in *Wiggam v. Bamford*, 562 So. 2d 389, 391 (Fla. 4th DCA 1990), the state court held the efforts of the appellees did not amount to due diligence even after (1)

an unsuccessful attempt at service by the sheriff's department at the defendant's address, (2) a check of the local telephone book, (3) a check at the U.S. postal office for a forwarding or new address, (4) multiple telephone calls to local directory assistance, and (5) an unsuccessful attempt at service by an investigation agency. *Wiggam*, 562 So. 2d at 391. These actions did not meet the level of due diligence required since the appellees failed to follow "an obvious lead to the appellant's whereabouts [as] [t]hey failed to make inquiry of her attorney." *Id.*; *see also Torelli v. Travelers Indem. Co.*, 495 So.2d 837 (Fla. 3d DCA 1986) ("The plaintiff did not exercise due diligence in attempting to locate the defendant where he failed to make inquiry of the defendant's known attorney as to his client's whereabouts. The failure to follow such an obvious lead compelled the conclusion that the plaintiff had not exercised due diligence.").

      Here, there is no evidence that Safari's attorneys inquired into Quercia's business address with at least two of Quercia's attorneys. Safari's attorney, Tom Manos ("Manos"), contacted Quercia's state court attorney, Jared Gamberg (Gamberg"), about service issues in May 2015. But according to Gamberg's affidavit, Manos did not ask him for an address or contact information for Quercia, nor did Gamberg state that he could not provide that information. *See* ECF 17-5 at 1 – 2. Further, Manos and Quercia's attorney in the present action, Edward Polk ("Polk"), were in communication via email and phone conversations regarding this action as early as July 2015. *See* ECF No. 17-4 at 1. Safari did not serve the Florida Secretary of State until August 4, 2015, weeks after the parties' communications. There was ample time, then, for Manos to ask Polk where to serve Quercia in their prior communications. Because Safari failed to ask Gamberg and Polk these basic questions during its talks with each—in particular, where to serve Quercia, or whether either could provide a business address for Quercia or contact information for someone with knowledge—Safari failed to follow obvious and available leads on Quercia's whereabouts. Thus, I find Safari has not exercised due diligence in attempting to locate Quercia. Defendant's Motion is granted.[1]

---

[1] It is unnecessary to address Defendant's timing and relation-back arguments concerning Plaintiff's First Amended Complaint since I grant this Motion on insufficient process grounds.

4

## IV.   CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Quercia's Motion to Quash Service of Process and Dismiss for Insufficient Service of Process (ECF No. 20) is **GRANTED**. Plaintiff's First Amended Complaint (ECF No. 21) is **DISMISSED** *without prejudice*. The Clerk shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 8th day of August 2016.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*